All rise. Please be seated. Let's take up Tracy v. Duke. Argument to the appellant. Good morning, everyone. Please be quiet. Good morning. My name is Stephen Osborne. I'm the attorney for the plaintiff and the appellant, Stephen Tracy. This case arises out of an arrest. Mr. Tracy was arrested in October of 2013 and charged with theft. The sole basis of the arrest was Mr. Tracy's deposit of a $10,000 check, payable to Colt Duke Trust, into his personal account. Now, as it turns out, Mr. Tracy paid the $10,000 he deposited to Mr. Duke approximately five business days later. Of course, that information was unavailable when the state chose to file charges against Mr. Tracy and have him arrested. This payment of $10,000 arose out of settlement of an earlier lawsuit. I frankly refer to this as a dysfunctional family situation where Mr. Tracy's wife is involved in about three generations of family dysfunction. You know, I would have appreciated a Venn diagram for this one. Well, I can give you the short version. No, I got it. I read it. But it is a little bit confusing and frankly disappointing on a personal level. But after years of litigation regarding grandmother Mary Martha Gumbs' estate, the parties entered into a settlement agreement. That settlement agreement called for the payment of $20,000 to Mr. Duke, $10,000 from grandma's estate, $10,000 from grandfather's estate. Mr. Tracy, the family farm was sold pursuant to the settlement agreement. The funds were divided between grandma's half and grandpa's half. Mr. Tracy, as trustee of the Mary Martha Gumbs Trust, pays Colt Duke $10,000 on August 12th. And then this check from Sean Wheeler is mailed to Mr. Tracy representing the other $10,000 that was owed to Mr. Duke. Mr. Osborne, let me ask you a question if I may. Sure. Do you believe that this case should be remanded for a trial on the issue of whether there was absolute immunity? Do you believe that it's a question of fact? Yes, I do because it turns so closely on whether or not probable cause existed. We allege that there was no probable cause, and counsel would disagree. But to determine whether or not absolute immunity exists, we have to determine the point at which law enforcement and Mr. Hartree attained probable cause of a crime. And that's the point of demarcation between the investigative function and the advocative function where he represents the state before a judge. So not necessarily to trial, but at least to give us the opportunity to do discovery, to find out what the police knew, what the prosecutor knew, how they communicated amongst each other, and who made the decision that probable cause existed to have Mr. Tracy arrested. Already, Mr. Hartree, in his brief, suggested it was the chief of police, Mr. Ackman, who signed the information, who made the determination that probable cause existed. If absolute immunity is granted, everybody's going to turn around and blame the prosecutor. Now, I believe it was the prosecutor's decision based upon the police's lack of investigation in August of 2013 through October of 2013. Unsolicited by anyone, Mr. Wheeler, the aggrieved brother-in-law, comes in three years after the 2010 transaction and accuses Mr. Tracy of stealing, not his money, granted, but Mr. Duke's money. But do you believe that this Court has the power to decide as a matter of law that there was or was not absolute immunity? Well, I believe there's a sequence of decisions that the Court can make to decide that. So, for instance, if the Court deems as a matter of law that Mr. Hartree did not have probable cause when he advised Mr. Ackman to sign the information and have Mr. Tracy arrested, I believe you can make that assessment as a matter of law. At that point, because probable cause had never been amassed, everything that the prosecutor did up until the filing of the charges, by definition, investigated and advising the chief of police that he had probable cause to sign the information and have Mr. Tracy arrested. So I believe that the finding is the probable cause can lead to that. Well, do you believe that we can, as a matter of law, make a finding that the prosecutor had no qualified immunity? Again, I believe that that would be more appropriate after discovery had been conducted so we can find out the middle processes that had been followed by the defendants, what they were thinking, why they did what they did, what evidence they relied on, that sort of thing. For instance, in the trial court, Mr. Hartree's counsel argued two reasons why Mr. Hartree filed charges without ever investigating Mr. Tracy's criminal intent. The first was that the statute doesn't require it, even though it expressly requires it. The appellate court decisions expressly require it, and the IPI jury instruction expressly requires it. After making the argument that no intent is required, he then turns around and argues that he was confused as to the intent that was required. So he's either admitted that he misread the statute entirely or that he was confused by the statute and that he acted without determining Mr. Tracy's intent to permanently deprive Duke of the funds when he made his decision to direct Mr. Ackman to sign the information. So primarily we're looking for the opportunity to develop the evidence further, and then if the case would come back at a later date after we've fleshed out all these details and discovery, then I believe there would be those sort of powers in the court to make those decisions, but not just on this record, the complaint that's been filed. So what relief do you want us to give your client? We would like to have the court's order dismissing the case under 2619 reversed and the matter remaining for further proceedings so that we can engage in discovery to find out the communications and the knowledge of the police and the prosecutor who made what decisions based on what. And again, I believe it would be the prosecutor's decision to advise Mr. Ackman to sign the information. The only police involvement occurred when the complainants came into their office and solicited on August 12th of 2013 alleging theft. They didn't do any investigation. They didn't call the defendant, take his interview. They didn't call his counsel. They typed up the complaint and sent it over to Mr. Hartridge. Then Mr. Hartridge, for approximately two months, filed it over, verified that the deposit was made, and really nothing else. And in the interim, Mr. Wheeler is doing legwork for the prosecution. He's gathering closing statements from the real estate broker who closed the sale of the family farm. He's typing up documents and sending them to Mr. Tracy to get him to sign so that he can try to prove that Mr. Tracy's not being honest. All this information isn't going back to the police. It's going directly to Mr. Hartridge. So you don't think that as of this moment in time with what's happened, that the record is fully developed enough for this court to make any findings on the immunity? I do not. I think the probable cause has to be determined. That's a fact-based assessment based on what the police officers knew when they signed the information. Did the police officers do it unilaterally, or did they do it upon the direction and recommendation of the prosecutor? So, I'm sorry, I have a lot of questions. No, please. So what is the difference between the present status of this case and what I'll call the Kionka case versus Seitzinger in the Seventh Circuit? I think you both quote that case. Yes, I believe that that's probably the most important case because that was a qualified immunity case that was argued. Right, but in that case, the court made a finding based on the record. So what I'm trying to figure out is how is the Seventh Circuit case different from this case as far as getting the facts teased out of the case? Well, I believe based on the, you know, first of all, we take the, of course, the complaint is true at this point in the proceedings. Right. What Kionka did was said we're going to let the police officer go who went out and arrested the plaintiff on the direct orders of the prosecutor. The police officer in Kionka was unsure whether a crime had been committed just like the Robinson police were in this case when they sent the incident report over. They waited for the police's advice. In Kionka, the prosecutor— They waited for the police's advice? No, the police waited on the prosecutor's advice. In Kionka, the prosecutor deemed the complaint sufficient to allege a crime against Mr. Kionka. And so then the police officer went out and arrested him. Mr. Kionka sued for arrest without probable cause. The trial court let the policeman out on qualified immunity  He made the prosecutor stay in because he wrongly assessed the facts presented as presenting probable cause and then turned around and directed the policeman to go arrest the criminal defendant, the civil plaintiff. But don't you ask for that in the alternative in your pleadings? That if there wasn't absolute immunity, then surely there was not qualified immunity. Well, I think that's the case as a practical matter, but I think it's a little bit different issue because— Tell me why it's different. Well, because the qualified immunity issue only requires a reasonable belief by the defendant that they had probable cause. And so the point about what Mr. Hartridge argued at trial, he thought no intent was required despite years of appellate court decisions requiring criminal intent. And the Illinois patent jury instruction requires criminal intent to deprive the owner of his property. For all those reasons, I think the qualified immunity argument will ultimately fail because of how Mr. Hartridge interpreted the law and the intent requirement of theft. So you think more facts need to be developed on that issue as well? On probable cause and also, yes, the qualified immunity issue of why Mr. Hartridge made the decisions he made and directed Mr. Ackman to sign the information. Sorry if I got you off base. No, that's okay. I'll try to get back to it. You know, cutting to the chase a little bit, the theft charge has two elements, improper act with improper intent. I don't believe they had probable cause of either of those. There was no taking of any money. Mr. Tracy was appointed trustee. The check was payable to Colt Duke Trust, not to Colt Duke. There were no other assets being administered. Mr. Tracy's only obligation was to negotiate the check and get the money to Duke. But why did he put it in his own personal account? Because there was no other account to run it through. He could have opened up a trust account, deposited the check, wrote one check, and closed the trust account. That would have been the only transaction that would have occurred. But the recipient, Duke, could have signed for the trust and then signed his name, and it would have been up to the bank to determine whether to sign it. Certainly, Mr. Tracy and I outlined three or four different ways he could have done it. He could have cashed the check and handed Mr. Duke the money. He could have endorsed the check over, signed it as trustee to Mr. Duke as the beneficiary of the trust. Or he made a decision, and I'm sure he regrets now, that it's probably easier for him to just deposit it and turn around and write a check. And so five business days later, he wrote the check to Mr. Duke. Duke accepts the check and endorses it and sees that it's on a check in Tracy's personal account. Duke has now got $20,000 between August 12th and September 1st on a settlement agreement that was approved in late July. So Duke got his money, and yet the criminal complaint is not what Tracy did with the money because the prosecutor didn't know, they didn't investigate what Tracy did with the money. Their complaint solely was based upon the deposit of the check, which I characterized as a commingling of trust assets and personal assets. That becomes important because commingling is a civil wrong, not a criminal wrong. And what remedy does a commingling of trust and personal assets require? Tracing of the funds from the depositor to the beneficiary. The state files its criminal charge. That very afternoon, Mr. Tracy provides his bank records tracing the funds. What does Mr. Hartridge do then? He dismisses the case with prejudice. So the remedy sought by the allegations in the information that led to the dismissal of the case was a civil remedy requiring Tracy to trace the funds. The allegations in the complaint are not of theft, but they're of a commingling of trust funds with personal funds. So not only do I think he lacked the elements, the particular elements of theft, I think what he did was he served as Duke's private attorney in a civil dispute about commingling of the funds, which also serves as a predicate for taking it out of judicial, I'm sorry, prosecutorial immunity, where the prosecutor is acting within the scope of his duties in presenting the case to the court, you know, in conjunction with a criminal matter. Is there any testimony that Mr. Duke went in and made the same complaint? You know, I believe that the vast majority of the complaint is Mr. Wheeler. In fact, I allege that the complaint comes from the police's incident report that Mr. Duke was confused about what money he got, that it was Mr. Wheeler who was driving the bus who takes Duke to the police station. Wheeler verbalizes the complaints. Duke certainly fades into the background, and then it becomes Wheeler interacting with the prosecutor, Wheeler doing the legwork for the prosecutor. And if you read in particular, I believe it's paragraph 39 of our allegations, when Mr. Wheeler emails the prosecutor, he's complaining about his sister, Mr. Tracy's wife, and Mr. Tracy's bad motives. And he's still carrying around checks from his grandma's estate, showing the prosecutor, here, look what they did to my poor grandma. Well, in the meantime, before the settlement, Judge Dunn made findings of fact in grandma's estate litigation that everything that they were complaining about, grandma was aware of, grandma approved, grandma consented to, and Mr. Tracy did nothing wrong. One is Mr. Wheeler's response, January 29, 2009 decision. The trial judge, Judge Dunn, says you didn't prove your case after the plaintiff's case in chief, not even after the defendant's case. You failed to prove your case, so basically they're in trouble. Well, six weeks later, they go to the Robinson Police Department and accuse Mr. Tracy of crimes involving these same transactions that the civil court has already rejected. So you filed this humongous brief with opponents. Yes. The one thing that I couldn't find in here were the orders. I got one order, which was the final order, but, man, maybe I missed it. Well, the judge entered a separate order for each group of defendants. Right. I couldn't find them all. No, I just included the one that had to do with Mr. Hartridge, the prosecutor. Basically, all the other motions to dismiss were largely denied at the trial court. So Duke is still in it, Wheeler is still in it? Duke, Wheeler, Ackman, Markway, the city of Robinson, everybody's still in it but Mr. Hartridge. And Mr. Ackman at the trial court argued for qualified immunity because he was following the prosecutor's directions. Right. So that's why we're concerned that if Mr. Hartridge is let out before discovery and we get to learn who made what decisions and on the basis of what facts, miraculously everybody's going to turn around and point the finger at the prosecutor and the prosecutor's going to be out of the case. So we think we ought to be able to allow discovery to develop the evidence as to why the various parties did what they thought they needed to do. But just briefly back to my point about Mr. Wheeler. It's obvious from reading the allegations that he still got a grudge against Mr. Tracy from Grandma's estate planning that occurred back in 2000. That was litigated in 2005 to 2009. He didn't get the results he was looking for. So then he found out how Tracy processed this payment. And three years after the payment's made, they go file criminal charges. The statute of limitations has expired when Mr. Hartridge filed the criminal case against Mr. Tracy based on what we believe is a false statement that Mr. Duke just learned of the deposit into the personal account. In fact, had Mr. Hartridge or the police investigated, they would have learned that Duke got his $20,000 and the second $10,000 was by check payable on Mr. Tracy's personal account. He was entitled to the money on August 3, 2010 when his 23rd birthday came. So it was more than three years after Duke had knowledge that he was entitled to the payment and he either got the payment or he didn't get the payment. What they did is they elevated form over substance. They said, I don't know if I got my money, but Tracy deposited the check in the wrong account. And neither the police nor the prosecutor bothered to investigate what happened to the money. They just concluded that a criminal action had occurred once Mr. Tracy deposited the check. My point is that he had authority to control the check. Now, he might have not done the best way, but the settlement agreement gave him that authority. And then the state never investigated what his true intent was. His true intent was most obviously evidenced by the settlement agreement of three weeks earlier where he acknowledged having to pay Mr. Duke $20,000 on his 23rd birthday. Thank you, counsel. Thank you, counsel. Argument for the appellee. Thank you, Your Honors. My name is Craig Unrath. I represent the defendant appellee, State's Attorney Hartridge. Is that the only individual you represent? And Crawford County. But counsel has conceded that Crawford County is named only as a possible indemnitor. So there are no substantial complaints against the county itself. What about the sheriff? The sheriff is not an issue in this appeal. This only concerns the application of prosecutorial immunity as it applies to defendant Hartridge. Now, there are two reasons why prosecutorial immunity applies in this case. Plaintiff's entire claim is based on the notion that Hartridge did the work of police. However, when you look at the allegations in the complaint, there are only two events, two instances of conduct in his part that are alleged to have somehow represented police work. The first is that he subpoenaed the bank records that the police had come up with in their investigation. Well, as I pointed out in my brief, he had a duty to do that. These documents, he didn't search out these documents. He wasn't looking for evidence of probable cause. He was not doing any investigation at all other than verifying the material that the police provided him, which the police have obtained in turn from the complainants, Mr. Wheeler and Mr. Tracy. By the way, Justice Case, you had mentioned whether or not Wheeler alone had made this complaint. If you check the complaint, it states that on August 12th, Duke and Wheeler accused Stephen Tracy of theft and convinced Officer Marqua and the chief of police to investigate the crime. That's at page 1059 in the common law record. Now, when you add it all up, Plaintiff's entire case amounts to a claim that state's attorney Hartridge should be held liable for an inadequate police investigation. Excuse me, you started out by saying there are only two events in the complaint. Yes. One was that he subpoenaed the documents, but I think you didn't give us the second reason. I'd love to hear that. I've departed from my own mind. I understand. It happens. The second event is that a claim that Hartridge convinced or perhaps coerced the chief of police to sign the information verifying the facts that lead to the criminal prosecution. Now, first of all, it's important to look at the complaint itself and you'll find there is no such allegation in the complaint. Nowhere in this complaint do plaintiffs allege that state's attorney Hartridge coerced or convinced or persuaded Chief Ackman to sign the information verifying the truth of the facts. The actual statement referred to in his statement of facts is found in page 1057 of the common law record where in paragraph 15, plaintiffs allege that defendant Hartridge, quote, filed or caused to be filed the information charging Tracy with felony theft. But isn't that why they're asking for discovery because they don't know the circumstances? Your Honor, I would submit that it doesn't matter. Why? The reason is this. It is Chief Ackman's signature on that information. Now, even if we assume the allegation is in the complaint, which it's not, and if we assume that the truth of that allegation, the fact remains Chief Ackman signed it. He signed it. It's his responsibility and he was certainly aware that when he signed it, he was taking full responsibility for it. That's the entire purpose of his signature on the information. The fact that he was convinced or persuaded by someone else, whether it was Hartridge or anyone else or Wheeler or Tracy to do that is immaterial. It's Chief Ackman's signature. So it doesn't make any difference. It really doesn't make any difference, does it, as it relates to your client? Not to my client. Not to my client. And I think that underlying this entire case is the presumption that if my client is entitled to absolute prosecutorial immunity, that this will just spread on right on down the line and everyone gets off. Now, that's just not true. I handled a case very similar to this just a few months ago in the federal court, and the law is clear that reliance, to the extent that there was any, but reliance on a state's attorney's advice is one factor that can be taken into account in addressing qualified immunity for the police officers. It's not dispositive. So do you agree that there needs to be further fact-finding in order to determine whether either immunity existed? No, I don't agree. If the record's not complete? Respectfully, I believe that we can look at the allegations of the complaint and we can see that the involvement, that the state's attorney Hartridge's involvement is extremely limited in this case. Again, two events. He verified that the police documents that they produced were accurate. That who produced? That the police produced were accurate. In other words, they came to him, they showed him the bank account records. Where did they come up with someone else's bank account records? It was incumbent upon Hartridge to find out if those records were accurate. But the subpoena he issued was returned to him, right? Yes, absolutely. Which I thought was unusual because if you have a police investigation going on, the police come in, they say we need more information, the police get a subpoena or a warrant, and then it usually goes back to the police, not to the state's attorney. If the police issue that subpoena, that would be true. Can police issue a court order? No, but they can obtain a subpoena through court order. And they do it through the state's attorney. Right. But then the return is usually to the police department. And had it been in this case, just hypothetically, had the return been to the police department, what's the next step they would have taken? Perhaps contacting Mr. Tracy? Perhaps. But that never happened. Your Honor, it's my understanding that the subpoena would be returned to the state's attorney if the state's attorney issued that subpoena. However, if I'm mistaken about that. No, that's okay. You may be correct. The fact remains that this is a police investigation. But did your client then give those records to the police before there was ever an indictment or information or a criminal complaint? The record is unclear on that point, but it makes no difference. The police in this case had what they believe were bona fide bank records supporting the claim of criminal conduct. And, therefore, they had probable cause for an arrest. Do you believe that the burdens are different between qualified immunity and absolute immunity when it comes to probable cause? I don't. Qualified immunity requires that there be a constitutional violation. And in this case, if probable cause for arrest existed, then qualified immunity would presumably apply. Well, your co-counsel indicated that in qualified immunity, it's not probable cause, but whether there's a reasonable suspicion, it's a little different. Do you agree or disagree with that? As I understand it, qualified immunity will apply if, one, there is a constitutional violation, a deprivation of rights under the Constitution that the police officer knew or should have known would occur. That is completely different than absolute prosecutorial immunity, which, historically, is derived from the same immunity that you three judges enjoy right now. The immunity in this case applies because, number one, in A, even if we accept all the facts in the complaint as true, the fact remains that Attorney Hartridge, the State's Attorney Hartridge, never performed the work of the police. The second reason it should apply is that there was probable cause for arrest. Now, I spent some time both in my argument on qualified immunity and the argument in chief that probable cause was established in this case. And I think that the best description in my brief is the following rule of law. The complaint of a single witness or punitive victim alone is sufficient to establish probable cause unless the complaint would lead a reasonable officer to be suspicious. Now, in this case, we have two people, Colt Duke and Mr. Wheeler, claiming that there's been a theft of a substantial amount of money and showing bank records that indicate that a check made out to Colt Duke was put not into a trust account but placed in the personal account of Mr. Tracy. Now, should the police have investigated further? Yes, I think they should have. Is that the fault of State's Attorney Hartridge? Does he lose his prosecutorial immunity because he failed to tell them to direct the police investigation? In fact, it's the other one. It's the complete opposite. Had Defendant Hartridge called the police and said, look, I want you to contact Tracy. I want you to subpoena Tracy's bank records. I want to get Colt Duke's records to find out if there were any deposits of that check. Well, now, now, Defendant Hartridge has given up his prosecutorial immunity. He is now directing the police. Now, you had mentioned the Kiyonka case, and that case did not involve prosecutorial immunity. It was qualified immunity. However, there's a big distinction in that case. So when you use the term prosecutorial, you're talking the absolute immunity. Absolute prosecutorial immunity, yeah. Okay, go ahead. So I am abbreviating it. In Kiyonka, the State's Attorney did become involved in the investigation. He did do the work of police, and he was the one who actually directed the police to make the arrest. None of these facts are appropriate or an issue in the case of harm. A prosecutor does that all the time, though. As a warrant officer, the police come in and they ask, do we have enough yet? A prosecutor who's designated is designated for just that reason, isn't it? I agree. And when the prosecutor does that, he's putting his immunity on the line. Now, you know, this entire case is controlled by the Imler decision. That's the seminal U.S. Supreme Court case. And the Court pointed out that prosecutors will inevitably make many decisions that engender colorful claims of constitutional deprivation. Nevertheless, the Court ultimately concluded that the prosecutor's office would suffer if it were constrained by concerns over liability. Now, I want to ask the Court to keep in mind how any decision this Court makes would apply to future cases. Here, it's very simple. Had the police done an adequate investigation, they would have called Tracy, they would have said, show me your bank accounts, what happened here, let's get the whole story. And it probably would have been easily resolved. Partridge didn't know that. Not at the time it happened. If he had gotten involved in this investigation, said, do this, do that, interview this witness, get me this evidence, now his prosecutorial immunity vanishes, he is part of the investigation, and what if they decide to prosecute anyway? And it turns out that the arrest was unfounded. That's the risk he's taking when he gets involved in the police investigation. Do you think his eyebrows should have been raised a little bit about a three-year-old complaint? Not necessarily. Actually, more than that. Not necessarily. And again, I mentioned this in my brief. How can he put himself in the shoes of Colt Duke and Wheeler and decide whether they were lying when they said we just discovered this? You don't think he... So what your position is is that a prosecutor is better off not giving advice because they open the door to qualified immunity. It's better to let the police go on their own and do what they think is best without any input from the prosecutor. I think that whenever the prosecutor gets involved in that police investigation, he's taking a risk. He or she is taking a risk. As far as I can put it, in a close case, it could be determinative. Now, in this case, I think the police should have done a lot better job. I think that's pretty obvious to everyone here. The question is, is that the fault of Hartridge? Is it his? Should he be held liable for their inadequate investigation? I'm sorry. Go ahead. Counselor, the motion or the hearing on the motion to dismiss under 2619 that the court granted, did the court consider affidavits? And I'm just looking at the court's order. What was before the court except the complaint, which the court was obliged to look at the allegations and take those as true? The court viewed the allegations of the complaint plus a number of exhibits, which would be, I believe, the information to the complaint. But as I recall, there were no affidavits or depositions or anything like that, but it was just exhibits that were attached. And in the appellant's brief, there's a number of facts spelled out in the statement of facts. Were those considered by the court in granting the 2619 motion? I guess in your view, the court had enough to rule on the 2619 motion. And I'm going to ask counsel in rebuttal, well, exactly what more should the court have considered in granting this 2619? This was not the initial complaint. The complaint had been amended a number of times. I have no doubt that the court reviewed the complaint as a whole. My concern is that after the fact, after dismissal came in, the allegations in the complaint have been embellished, even here in oral argument. Facts that Wheeler had a grudge against Tracy and so forth. Here's one. Wheeler engaged in all of this investigation, and he just now said that he gave this information to Hartridge. There's no allegations of that anywhere in the complaint. What about the e-mails? Were those, as Justice Schwarm said, the e-mails, were those attached? No. No, they were not. And did you seek to file an affidavit of any kind to counteract any of the information? No, there was no affidavit attached to my knowledge. Plaintiff has raised this as a possible grounds for reversal. However, that contention was never raised in the court below. But was it a verified complaint? I believe it was, yes, Your Honor. I think so. So you filed just one with an attorney's signature, a response? I mean, sorry, a motion to dismiss. Yes. And had plaintiff raised the issue of affidavits or lack thereof at the trial court, this could have been certainly resolved. Is that their burden? Yes. If they've already filed a verified complaint, is that their burden? I don't see that an affidavit was necessary in the first place because the allegations of the complaint on their face demonstrate that, and this is a key point that I believe you began the oral argument with, I believe that this can be decided as a matter of law based solely on the allegations of the complaint, the amended complaint. Third. Third amended? Third amended complaint. So you do believe that the issue can, as a matter of right, the position it's in right now, be decided by us as a legal conclusion, a de novo review of the matter? I don't believe that there's anything plaintiff can add to this complaint that discovered would serve any purpose that would alter the fact that, number one, defendant Hartridge's involvement did not constitute activity on behalf of the police, and two, that there was probable cause for arrest. And if there is probable cause for arrest, then State's Attorney Hartridge, everything he does is associated with the judicial process and absolute immunity applies. When a victim of a crime goes to police and claims there's been a theft and offers documentary evidence of a theft, that's probable cause. And from that point on, defendant Hartridge was immune from suit. So you believe that that, in and of itself, a person coming in with bank records, in and of itself raises probable cause for charging without further investigation? Absolutely. Now whether, should the police continue their investigation? Should they look into other matters? I think so. Absolutely. But is there probable cause for arrest? Yes, there is. The standard is fairly low. If the officer has a reasonable belief that a crime has been committed, and here we have the actual victim telling the police that money was stolen from him, I believe that there is sufficient evidence for probable cause, supporting probable cause. Now wait, you used the word reasonable basis. That's why I started out by asking. There's two different standards here, aren't there? The qualified immunity is the reasonable basis for probable cause. Absolute immunity is probable cause. Do you disagree or agree with that? I do not disagree with that. And I believe that there was probable cause for arrest in this case, and I would support that with another quotation from case law. Did you finish that sentence? That an officer who receives information from a victim of a crime which seems reasonable to believe is telling the truth, the officer has probable cause for arrest. And the prosecutor is therefore entitled to immunity. Thank you, Your Honor. Is that how that sentence ends? And the prosecutor is therefore? That is my addition to the sentence. Thank you, Your Honor. We urge the court to affirm the order dismissing this case. Thank you. Thank you. Revato, are you? A few points if I might, for Your Honor. Counsel suggested that the complaint fails to allege that Mr. Hartridge advised Mr. Ackman to sign the complaint. I reference count three, paragraph 119. Hartridge advised Ackman as to the facts, existence of probable cause, and legal sufficiency of the purported criminal charge, and while requesting advising or otherwise inducing Ackman to swear and attest to the facts and truthfulness of the allegations in the charge. So hit the point that we didn't allege that Mr. Hartridge recommended or directed Mr. Ackman to sign the information is just flat out false. We alleged it in count three, paragraph 119. And in count 17, which is the 1983 case as well, we repeated the same allegation. So that's the first point. His characterization is evaluating evidence based upon the subpoena dues as taken. If you look at Buckley v. Fitzsimmons and the Kalina case, that's not the test. The test is why is he doing that? Is he preparing evidence for trial? Is he considering evidence for trial, or is he corroborating evidence so that he can recommend probable cause for an arrest exist? And nothing that Mr. Hartridge did in this case goes beyond corroborating the deposit of the check, not for trial, use of trial, but so that he can recommend that probable cause exists to have Mr. Tracy arrested. That, by definition, is investigation and not advocation on behalf of the state. Your point regarding the subpoena, it was returnable to the prosecutor. I believe the purest procedure to be followed is that that gets returned to the trial court. And then the state makes a motion to review what's been provided, and the judge considers that. And at that point, Mr. Tracy may get another opportunity to appear, be advised of what's going on, and assert his obvious lack of criminal intent because the money was, in fact, paid to Mr. Duke a couple of days after the deposit. I was unclear how he gets a subpoena without some kind of ongoing investigation. Well, there was no ongoing investigation. The police took the statement, sent it over to Mr. Hartridge, and did nothing from that point until Mr. Ackman signed the information. Whatever investigation was done, other than take the initial complaint, was done by Mr. Hartridge and Mr. Wheeler. And those things are spelled out in detail in the complaint. Mr. Wheeler's communications with Mr. Hartridge, Mr. Wheeler's gathering of documentary evidence, and not taking it to the police, but taking it to Mr. Hartridge. So the e-mails that were included are part of the record. Direct quotes from the prosecutor's file. We haven't done formal discovery, but they did provide informal discovery consisting of some of the prosecutor's files. And that's where I got those e-mails. And counsel was back to my line of questioning. I asked a question to counsel about what the court considered in ruling on the 2619 motion. And I get the thrust of your argument, the court should have considered more. Well, and let me finish my question. And if the court would have been allowed to consider more, it would have been a different ruling. So what did the court consider, and did you ask the court at that point in time, Judge, this is too early to rule on this actually. I did, and how that happened, Your Honor, was the judge's ruling on August 3rd, paragraph 6 of the judge's ruling, says defendants Hartridge further argued that the actions were based on a misreading of the statute regarding theft. That's what Hartridge argued. I misread the statute. So then the court says, then they dismiss the charge upon learning of that mistake, file a motion to dismiss. He also argues that all the actions taken were clearly within the role of the prosecutor. There was nothing introduced at the trial court to reflect Mr. Hartridge's mental processings throughout the investigation, throughout advising actors assigned to the information. And I did raise that. I filed a motion to reconsider, pointing that out. So you're saying the court picked this up, these facts, from argument made on the motion, the 2619 motion. Correct. That weren't supported by affidavit. And I think that's also extremely important because it raises the issue of qualified immunity, whether Hartridge had a reasonable basis when he admitted that his actions were based on a misreading of the statute. That defeats the reason, in my view, of the qualified immunity arguments. Thank you, counsel. Thank you. Thank you for your briefs, your arguments. We'll take this case under advisement. The issue of a ruling before us. The court will be recessed until 1 p.m. All rise.